IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PREVENTIVE ENERGY SOLUTIONS, LLC,<br><br>　　　　Plaintiff,<br>v.<br><br>NCAP VENTURES 5 LLC; NCAP VENTURES 11, LLC; ANTHONY J. SUTERA; and RHETT SPENCER,<br><br>　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br><br>Case No. 2:16-cv-809-PMW<br><br>Magistrate Judge Paul M. Warner |

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including trial, entry of final judgment, and all post-judgment proceedings.[1]  Defendants nCap Ventures 5, LLC ("nCap 5"), nCap Ventures 11, LLC (nCap 11"), Anthony J. Sutera ("Sutera"), and Rhett Spencer ("Spencer") (collectively "Defendants") have motioned the court to dismiss the majority of the above captioned case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

On January 6, 2017, the court heard oral argument on Defendants' Motion.[3]  At the hearing, Plaintiff Preventive Energy Solutions, LLC ("Preventive"), was represented by Jared N. Parish and Eric G. Benson.  Defendants were represented by Daniel K. Brough.  At the conclusion of the hearing, the court took the motion under advisement.  Now being fully advised, the court renders the following Memorandum Decision and Order.

---

[1] Dkt. No. 8.
[2] Dkt. No. 4.
[3] Dkt. No. 13.

## BACKGROUND

Preventive is a solar panel and photovoltaic system sales and installation company.[4] Defendants are in the business of developing portable home-solar battery products.[5]

On December 21, 2015, the parties entered into an exclusive Manufacture and Supply Agreement ("MSA").[6] Prior to entering into the MSA, Preventive alleges that Defendants made several representations about the capability of their solar battery technology.

Specifically, Preventive claims that Defendants represented that "nCap had invented a rechargeable battery power storage system, which could be connected to a solar panel system, that provided enough battery capacity to power a furnace, refrigerator, and lighting overnight, giving homeowners an uninterruptible power supply which was not dependent on connection to the traditional power grid."[7]  Additionally, Sutera and Spencer told Preventive that Defendants' product was superior to any other battery backup system on the market.[8]  Sutera and Spencer represented that Defendants' product: (1) was powerful enough to recharge military-grade lithium ion batteries; (2) had a patent pending; (3) was the only product on the market capable of functioning as both a portable unit and as an in-home solar backup unit; (4) had been tested with successful results; and (5) was functional and could be delivered for immediate sale to homeowners.[9]

Between December 10, 2015, and December 24, 2015, Sutera assured Preventive that Defendants were on track to deliver fifty products to Preventive within 30 days.[10]  Sutera allegedly stated Defendants merely need time to get pricing finalized and cash to finish

---

[4] Dkt. No. 2 at ¶ 10.
[5] *Id.* at ¶ 9.
[6] *Id.* at ¶ 39.
[7] *Id.* at ¶ 27.
[8] *Id.* at ¶ 28.
[9] *Id.* at ¶¶ 33, 37.
[10] *Id.* at ¶ 36.

production.[11]   Therefore, on December 15, 2015, Preventive transferred a $500,000 check to

Defendants as an advance for future orders.[12]   Furthermore, Preventive hired additional

employees and purchased more warehouse space in anticipation of the incoming product from

Defendants.[13]

On December 21, 2015, Preventive executed the MSA with nCap 5 and nCap 11.[14]   The

MSA required nCap 5 to manufacture Defendants' product and Preventive to agree that nCap 5

would be Preventive's exclusive vendor.[15]   The MSA required nCap 5 and Preventive to develop

mutually agreeable Product Specifications.[16]   Furthermore, to facilitate the transaction, the MSA

stated that nCap 11 would obtain a 20% membership interest in Preventive.[17]

Additionally, the MSA contains a standard representations and warrantees disclaimer,

which states:

> EXCEPT AS SPECIFICALLY SET FORTH HEREIN, [NCAP5] DOES NOT
> AND CANNOT WARRANT THE PERFORMANCE, RESULTS, OR OUTPUT
> THE PRODUCT CUSTOMERS MAY OBTAIN BY USING THE PRODUCT . .
> .   [NCAP5]   MAKES   NO   WARRANTIES,   CONDITIONS,
> REPRESENTATIONS, OR TERMS (EXPRESS OR IMPLIED WHETHER BY
> STATUTE, COMMON LAW, CUSTOM, USAGE OR OTHERWISE) AS TO
> ANY MATTER INCLUDING WITHOUT LIMITATION TITLE, ACCURACY,
> SECURITY,   NONINFRINGEMENT   OF   THIRD   PARTY   RIGHTS,
> MERCHANTABILITY,   INTEGRATION,   SATISFACTORY   QUALITY,
> CAPABILITY, OPERATION, PERFORMANCE, SUITABILITY OR FITNESS
> FOR ANY PARTICULAR PURPOSE.[18]

---

[11] *Id.*
[12] *Id.* at ¶ 37.
[13] *Id.* at ¶ 38.
[14] *Id.* at ¶ 39.
[15] Dkt. No. 2-1 at § 2(a).
[16] *Id.* at § 4(a).
[17] *Id.* at § 5(b).
[18] *Id.* at § 7(c).

The MSA also includes a standard integration clause wherein the parties agree that "[t]here are no representations, warranties, undertakings or agreements between the parties hereto with respect to the subject matter hereof except as set forth" in the MSA.[19]

After signing the MSA, Preventive discovered that Defendants' product representations were false. Preventive alleges that Defendants "did not develop the smart charger or battery recharging system, nor could Defendants successfully recharge the military-grade batteries . . . ."[20] Preventive claims that Defendants purchased "widely available existing battery products" and made alterations to the batteries in an attempt to pass off the modified product as their own invention.[21]

Further, on December 23, 2015, Sutera notified Preventive that Defendants' product would need an entire overhaul to reach the capability expected by Preventive.[22] Preventive alleges that the proposed reengineered product would destroy the portability of the product, would increase the product's cost by thousands of dollars, and would pose "significant health and safety risks to homeowners."[23]

To date, Preventive has not ordered or received any product from Defendants.[24] Additionally, Preventive and Defendants never developed mutually agreeable product specifications.[25] On July 19, 2016, Preventive filed the above captioned lawsuit alleging several causes of action, including: fraud, fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, breach of contract, conversion, unjust enrichment, and theft.[26]

---

[19] *Id.* at § 18(g)
[20] Dkt. No. 2 at ¶ 17.
[21] *Id.*
[22] *Id.* at ¶ 44.
[23] *Id.* at ¶ 46.
[24] *Id.* at ¶ 50.
[25] *Id.*
[26] *See* Dkt. No. 2.

## STANDARDS OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court presumes the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007). The court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 565 (2007). Further, although reasonable inferences must be drawn in the non-moving party's favor, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Additionally, to sustain a claim of fraud, a plaintiff must satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) demands that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9.

## DISCUSSION

For the following reasons, Defendants' Motion to Dismiss is granted in part and denied in part. It appears to the court that Preventive has taken a shot-gun approach, so to speak, to recover the $500,000 Preventive advanced to Defendants. The effectiveness or ineffectiveness of this approach is a dispute for another day. After carefully reviewing Preventive's complaint—accepting each of Preventive's factual allegations as true—the court concludes that some of Preventive's claims should be dismissed. Preventive does not allege nCap 11 breached any obligation under the terms of the MSA and, therefore, Preventive does not allege a plausible

breach of contract claim against nCap 11. Similarly, Preventive's only plausible claim for unjust enrichment lies with nCap 5. Accordingly, Preventive's unjust enrichment claim against nCap 11, Sutera, and Spencer is dismissed. Finally, Preventive's conversion and theft claims mirror Preventive's breach of contract claim. Therefore, the economic loss rule precludes Preventive from recovering in tort what it can recover in contract. With respect to Preventive's remaining claims, Preventive has alleged sufficient facts to survive a motion to dismiss.

## A. Fraud and Negligent Misrepresentation Claims

Preventive raises three fraud claims: fraud, fraudulent inducement, and fraudulent misrepresentation. In the alternative, Preventive alleges a cause of action under a theory of negligent misrepresentation. Preventive's misrepresentation theories are straightforward. Preventive alleges that Defendants knowingly made several false representations to induce Preventive into advancing Defendants $500,000 and signing the MSA.

Defendants do not attack the pleading sufficiency of Preventive's misrepresentation claims. Rather, Defendants argue that Preventive's misrepresentation claims fail as a matter of law for two reasons. First, Defendants argue that the MSA's disclaimer and integration clause prohibit Preventive from sustaining a claim for fraud or negligent misrepresentation.[27] Second, Defendants contend that this is a straightforward breach of contract case and, therefore, the economic loss rule prevents any recovery in tort.[28] The court finds neither of Defendants' arguments persuasive.

### i.    Disclaimer and Integration Clause

Defendants argue that the MSA's boilerplate representations and warrantees disclaimer, coupled with the MSA's integration clause, prohibits Preventive from claiming it was

---

[27] Dkt. No. 4 at 13.
[28] *Id.* at 14–15.

fraudulently induced into executing the MSA.  In other words, Defendants claim that because the MSA expressly disclaims any representations or warranties as to the fitness or viability of Defendants' products, Preventive cannot assert that it was deceived into advancing Defendants $500,000 or entering into the MSA.[29]  Preventive counters that whether Preventive reasonably relied on Defendants' pre-contract representations is a factual question and, more precisely, Defendants cannot use a standard disclaimer and integration clause to shield themselves from tort liability.[30]   In the court's view, the MSA's disclaimer and integration clause do not defeat Preventive's fraud and negligent misrepresentation claims.

### a.  The MSA's Disclaimer

It is axiomatic that a party cannot use a boilerplate disclaimer as a shield from liability for fraudulent conduct.  Accordingly, the MSA's disclaimer does not defeat Preventive's fraud and negligent misrepresentation claims as a matter of law.

Under Utah law, to prevail on a claim of fraudulent inducement, a plaintiff must establish:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

*Keith v. Mountain Resorts Dev., LLC*, 2014 UT 32, ¶ 41, 337 P.3d 213 (quotations and citations omitted).[31]  Similarly, under Utah law, the elements of a claim for negligent misrepresentation are:

---

[29] Dkt. No. 4 at 9–10.
[30] Dkt. No. 9 at 7.
[31] The elements of fraud and fraudulent misrepresentation are substantially similar to the elements of fraudulent inducement.  *See Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 16, 290 P.3d

> (1) the plaintiffs reasonably relied on the defendant's representation, (2) the representation constitutes a 'careless or negligent misrepresentation of a material fact,' (3) the defendant 'had a pecuniary interest in the transaction,' (4) the defendant 'was in a superior position to know the material facts,' and (5) the defendant 'should have reasonably foreseen that the injured party was likely to rely upon the' misrepresentation.

*Mitchell v. Smith*, No. 1:08-cv-103-TS, 2010 WL 5172906, at *8 (D. Utah Dec. 14, 2010)

(quoting *Price–Orem Inv. Co. v. Rollins, Brown and Gunnel, Inc*., 713 P.2d 55, 59 (Utah 1986)).

Whether the MSA's general disclaimer precludes Preventive's fraud and negligent

misrepresentation claims depends on whether the MSA's general disclaimer renders Preventive's

reliance unreasonable as a matter of law.

"Reasonable reliance must be considered with reference to the facts of each case, and is

usually a question for the jury to determine." *Conder v. A.L. Williams & Assocs., Inc.*, 739 P.2d

634, 638 (Utah Ct. App. 1987) (citations omitted).  However, "there are instances where courts

may conclude that as a matter of law, there was no reasonable reliance." *Gold Standard, Inc. v.*

*Getty Oil Co.*, 915 P.2d 1060, 1067 (Utah 1996) (citing cases).  For example, a court may

determine that a party's reliance is unreasonable where the party is given notice that any reliance

on the alleged misrepresentations is misplaced.  *Id.* at 1068.  Whether notice renders reliance per

se unreasonable depends heavily on the facts and circumstances of the case.

For example, in *Gold Standard, Inc. v. Getty Oil Co.*, the plaintiff and defendant entered

into an operating agreement to engage in a joint mining venture.  *Id.* at 1062.  The plaintiff

alleged that it had relied on the fraudulent misrepresentations of one of the defendant's

representatives during ongoing negotiations between the parties.  *Id.* at 1063.  Following the

misrepresentations, the plaintiff received several written clarifications which explained that the

plaintiff could not rely on any promises made by the defendant's representative during

---

930 (reciting the elements of fraud); *Larsen v. Exclusive Cars, Inc.*, 2004 UT App 259, ¶ 7, 97 P.3d 714 (reciting the elements of fraudulent misrepresentation).

negotiations. *Id.* at 1066. After a jury verdict in favor of the plaintiff, the trial court entered in a judgment notwithstanding the verdict in favor of the defendants. *Id.* The trial judge concluded, "[i]n light of all of the written clarifications" from the defendants, plaintiff "was not entitled as a matter of law to rely upon any inconsistent contemporaneous oral promises" made by the defendants. *Id.* The Utah Supreme Court affirmed, finding: "a party cannot reasonably rely upon oral statements by the opposing party in light of contrary written information." *Id.* at 1068. The court held that the plaintiff's reliance was unreasonable because of the "numerous writings" which provided the plaintiff notice that any reliance on the defendants' representations would be in error. *Id.*

Conversely, in *TS 1 Partnership v. Allred*, a commercial tenant sued its landlord claiming that the landlord fraudulently promised that it would compensate the tenant for any improvements made on the property. 877 P.2d 156, 158–59 (Utah Ct. App. 1994). The landlord argued that the tenant's fraudulent inducement claim was barred because the lease expressly stated that any improvement costs would be paid by the tenant. *Id.* at 159. The trial court found that tenant's reliance was unreasonable because of the contrary language in the lease. *Id.* The Utah Court of Appeals reversed, holding: "given [the tenant's] position that she would not have signed the lease, let alone made improvements on the leased space, absent the fraudulent representations," the trial court erred in finding the tenant's reliance unreasonable as a matter of law. *Id.*

Similarly, in *Larsen v. Exclusive Cars, Inc.*, the purchaser of a truck sued the dealership and car salesmen when the purchaser discovered the truck did not have a new engine as promised by the salesman. 2004 UT App 259, ¶¶ 2–3, 97 P.3d 714. The purchaser signed a sales contract which stated that the purchaser was buying the truck "as is" with "no warrantee." *Id.* at ¶ 3.

Furthermore, the document stated that any oral promises made during the sale were not binding on the dealer. *See id.* The Utah Court of Appeals found that the sales contract did not render the purchaser's reliance unreasonable as a matter of law. *Id.* at ¶ 10. The court noted that the purchaser would have never purchased the truck at the stated price or signed the sales documents absent the salesman's fraudulent representations. *Id.* The purchaser test drove the truck and there was nothing to place the purchaser on notice that the truck was mechanically defective or did not contain a new engine. *Id.* at ¶ 11. Therefore, the purchaser was entitled to present his claim of fraudulent misrepresentation to a jury. *See id.*

Preventive's claims are more like *Allred* and *Larsen* than *Gold Standard.* Unlike *Gold Standard*, Preventive did not receive multiple written statements contrary to Defendants' promises. Rather, the MSA contains a run-of-the-mill disclaimer like the disclaimer in *Larsen*. Furthermore, like *Allred* and *Larsen*, Preventive alleges that it would never have advanced Defendants $500,000 or entered into the MSA had Preventive known Defendants were incapable of delivering a portable solar battery compatible with Preventive's products.[32] The MSA's disclaimer may be probative evidence of unreasonable reliance. However, at the motion to dismiss stage, it would be inappropriate for the court to conclude that the MSA's boilerplate disclaimer renders Preventive's reliance unreasonable.

### b.  Integration Clause

For similar reasons, the MSA's integration clause does not prevent Preventive from asserting a claim of fraud or negligent misrepresentation. It is well established that extrinsic evidence is permitted to demonstrate that a contract is invalid. *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 15, 182 P.3d 326. For example, a party is allowed to present parol evidence "where the contract is alleged to be a forgery, a joke, a sham, lacking in consideration, or where

---

[32] Dkt. No. 2 at ¶ 63.

a contract is voidable for fraud, duress, mistake, or illegal." *Id.* "In other words, a written contract could purport to constitute the complete understanding of the parties, yet nevertheless be invalid because it is . . . the result of fraud." *Id.*

Preventive alleges that it is entitled to the recession of the MSA because the MSA was procured by fraud or, in the alternative, Defendants' negligent misrepresentations.[33]  Therefore, Preventive will likely be entitled to put forth extrinsic evidence to prove the invalidity of the MSA, regardless of the MSA's integration clause.  Accordingly, the MSA's integration clause is not fatal to Preventive's misrepresentation claims.

**ii. Economic Loss Rule**

Preventive's misrepresentations claims allege separate and distinct breaches apart from Preventive's breach of contract theory.  Therefore, the economic loss rule does not defeat Preventive's fraud and negligent misrepresentation claims.  "The economic loss rule prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute." *Reighard v. Yates*, 2012 UT 45, ¶ 14, 285 P.3d 1168.  The purpose underlying the economic loss rule is to mark a "fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *Id.* at ¶ 19 (quotations and citations omitted).

The economic loss rule does not apply every time tort and contract claims meet.  Under the independent duty principle, if the plaintiff can point to separate duties—one in contract and one in tort—the economic loss rule does not bar a plaintiff's tort claims. *See, e.g.*, *id.* at ¶ 14 ("Whether the economic loss rule applies depends on whether a duty exists independent of any contractual obligations between the parties." (quotations and citations omitted)); *Hermansen v.*

---

[33] *Id.* at ¶ 65.

*Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235 ("When an independent duty exists, the economic loss rule does not bar a tort claim. . . ."); *Assoc. Diving & Marine Contractors, L.C. v. Granite Const. Co.*, No. 2:01-cv-330-DB, 2003 WL 25424908, at *4 (D. Utah July 11, 2003) ("In Utah, the economic loss doctrine bars all tort claims that are not based on a duty independent of any contractual obligations between the parties." (citing cases)).  "The independent duty principle is a means of measuring the reach of the economic loss rule." *Reighard*, 2012 UT 45, ¶ 14.  Where the tortious conduct "does not overlap" with the duties "contemplated in contract, 'the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.'" *Id.* at ¶ 21 (quoting *Hermansen*, 2002 UT 52, ¶ 17).

Moreover, when applying the independent duty principal, timing of the tortious conduct is not absolute.  The Tenth Circuit has recognized that "Utah courts have not confined the economic loss doctrine to wrongdoing taking place after entry into a contract." *Donner v. Nicklaus*, 778 F.3d 857, 873 (10th Cir. 2015).  Rather, "parties can use a contract to allocate risks that may arise pre- or post-formation." *Id.*  Therefore, the court is required to "apply the economic loss doctrine to conduct regardless of whether it preceded or post-dated the contract." *Id.* at 874 (citing cases).

In *Hermansen v. Tasulis*, the plaintiffs sued their real estate broker and the broker's agent for negligence and fraud.  2002 UT 52, ¶¶ 5, 8–9.  The plaintiffs claimed that the brokers failed to disclose the unstable nature of the soil upon which their home was built. *Id.* at ¶ 8.  The trial court held that the economic loss rule barred the plaintiffs' negligence claims. *Id.* at ¶ 9.  The Utah Supreme Court reversed, recognizing that when the "line between contract and tort blurs" the court must examine "whether a duty exists independent of any contractual obligations

between the parties." *Id.* at ¶ 17.  The court held that the broker "owed a duty, independent of

any implied or express contracts, to be 'honest, ethical, and competent' in her relationship with

the [plaintiffs] . . . ." *Id.* at ¶ 22 (citations omitted).  Therefore, the brokers could be held liable

in tort for failing to disclose the material defects on the plaintiffs' property. *Id.* at ¶ 38.

Similarly, in *Bigpayout, LLC v. Mantex Enterprises, LTD*, the plaintiff brought a

fraudulent inducement claim against the defendant for false representations made prior to the

parties entering into an advertising agreement.  No. 2:12-cv-001183-RJS, 2014 WL 5149301, *4

(D. Utah Oct. 14, 2014).  The defendant argued that the economic loss doctrine barred the

plaintiffs' fraudulent inducement claim because the economic damages sought by the plaintiffs

flowed from the advertising agreement. *Id.*  The court held that there existed two independent

duties between the parties: (1) duties that arose during the negotiation of the advertising

agreement and (2) duties that subsequently flowed from the advertising agreement. *See id.*  The

court held that the economic loss rule did not bar the plaintiffs' fraudulent inducement claims

that "arose prior to the formation of the contract" as they are "independent of the duties the

parties undertook upon formation of the contractual agreement." *Id.*

Like *Hermansen* and *Bigpayout*, Preventive's tort claims arise independent of

Preventive's contract claims.  Preventive alleges two distinct theories of duty and breach.  First,

Preventive claims that during the pre-contract negotiation phase, Defendants made false

representations to induce Preventive to advance Defendants $500,000 and enter into the MSA.[34]

Second, once the MSA was formed, Defendants failed to perform under the terms of the MSA,

including failing to return Preventive's $500,000 advance and failing to provide Preventive with

---

[34] Dkt. No. 2 at ¶ 55 ("Defendants made several false representations to [Preventive] they knew were
false, or which were made recklessly . . . for the purpose of inducing [Preventive] to pay them $500,000);
*id.* at ¶ 61 ("[Preventive] entered into the [MSA] in reasonable reliance on the accuracy of the
representations made by Defendants . . . regarding the capabilities of the Product.").

the promised product.[35]  While these theories are close in substance, the duties alleged and the

damages that flow from them are separate and distinct.

Moreover, the court's application of the economic loss rule does not turn on the timing of

the tort in the pre-contract negotiation period.  Rather, Preventive's tort claims proceed because

Preventive has alleged two distinguishable theories of recovery.  Indeed, it would be nonsensical

if the economic loss rule could shield a defendant from tort liability based on the mere fact that a

contract later formed.  The purpose of the economic loss rule is to promote the allocation of risk

through contract.  *See West v. Inter–Financial, Inc*., 2006 UT App 222, ¶ 10, 139 P.3d 1059.  In

this case, Preventive could never intelligently negotiate and allocate risk under the terms of the

MSA where Preventive was allegedly brought to the bargaining table under false pretenses.

Therefore, Preventive's fraud claim and negligent misrepresentation claim are not barred by the

economic loss rule.

## B. Breach of Contract Claim Against nCap 11

Preventive does not allege nCap 11 breached its duties under the MSA.  "'The elements

of a prima facie case for breach of contract are (1) a contract, (2) performance by the party

seeking recovery, (3) breach of the contract by the other party, and (4) damages.'"  *Am. W. Bank

Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (quoting *Bair v. Axiom Design, LLC*,

2001 UT 20, ¶ 14, 20 P.3d 388).

Defendants argue that Preventive's breach of contract claim against nCap 11 fails

because Preventive has not alleged that nCap 11 breached any obligation it had under the terms

---

[35] *See id.* at ¶ 81 ("[Preventive] and [Defendants] entered into the [MSA] . . . . In performance of the
contract, [Preventive] provided $500,000 to Defendants. . . . Defendants breached the contract by failing
to deliver the promised Products . . . .").

of the MSA.[36]  Preventive counters that nCap 11's breach, if any, is a factual question, which cannot be resolved at the motion to dismiss phase.[37]

Preventive alleges that nCap 11 breached the MSA by "failing to deliver the promised products to [Preventive] to be marketed and sold."[38]  Under the terms of the MSA, nCap 11 has no obligation to deliver product to Preventive.[39]  Rather, nCap 5 is obligated to manufacture and deliver any products produced under the MSA.[40]  nCap 11's only obligation under the MSA was to facilitate the transaction by receiving a 20% interest in Preventive.  Preventive's complaint does not allege nCap 11 breached this duty.  Therefore, Preventive's breach of contract claim against nCap 11 is dismissed.

## C. Unjust Enrichment

Preventive's only plausible claim of unjust enrichment is against nCap 5.  Absent an enforceable contract, a plaintiff may recover under the equitable doctrine of unjust enrichment. *Jeffs v. Stubbs*, 970 P.2d 1234, 1245 (Utah 1996) ("Unjust enrichment law developed to remedy injustice when other areas of the law could not.").  To establish a claim of unjust enrichment, a plaintiff must establish:

> (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.

*Espinoza v. Gold Cross Servs., Inc.*, 2010 UT App 151, ¶ 10, 234 P.3d 156 (quotations and citations omitted).

---

[36] Dkt. No. 4 at 19.
[37] Dkt. No. 9 at 19.
[38] Dkt. No. 2 at ¶ 82.
[39] *See* Dkt. No. 2-1 (stating, "[nCap 5] hereby agrees to manufacture, package, and sell to [Preventive] upon receipt of a purchase order from the [Preventive] . . . .").
[40] *Id.*

Defendants argue that Preventive's unjust enrichment claim against nCap 5 is impermissible because any recovery Preventive may be entitled to is governed by the MSA.[41] Similarly, Defendants argue that Preventive's unjust enrichment claim against nCap 11, Sutera, and Spencer, fails because only nCap 5 received a plausible benefit.[42]  Preventive counters that its unjust enrichment claim survives because it is an alternative theory of recovery to Preventive's breach of contract claim.[43]  Furthermore, the relationship between Defendants allows Preventive to assert unjust enrichment against all Defendants to determine which Defendant received the $500,000 advance.[44]

In the court's view, Preventive has pled a plausible claim of unjust enrichment against nCap 5.  Preventive is entitled to plead "[a]lternative theories of relief" at the pleading stage of litigation.  *Kaiser v. Bowlen*, 181 F. Supp. 2d 1200, 1203 (D. Colo. 2002).  Preventive alleges that the MSA is subject to rescission because it is the byproduct of fraud.[45]  Under Utah law, a contract procured by fraud is voidable.  *See Ockey v. Lehmer*, 2008 UT 37, ¶¶ 19, 18, 189 P.3d 51 (holding that a contract arising from fraud, misrepresentation, or mistake is "voidable").  Moreover, courts have held that "[i]f the validity of [the] agreement is challenged . . . claims of unjust enrichment may survive a motion to dismiss."  *UFCW Local 1500 Pension Fund v. Mayer*, No. 16-CV-00478-RS, 2016 WL 6122458, at *11 (N.D. Cal. Oct. 19, 2016)  (applying Delaware law) (quotations and citations omitted).[46]  Therefore, because Preventive has

---

[41] Dkt. No. 4 at 21–22.

[42] *Id.* at 23.

[43] Dkt. No. 9 at 18.

[44] *Id.*

[45] Dkt. No. 2 at ¶ 64.

[46] The court was unable to find Utah case law addressing this issue.  But, several courts have held that at the pleading stage, if a plaintiff challenges the validity of the contract, the plaintiff may simultaneously assert a breach of contract claim and unjust enrichment claim.  *See Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1116 (E.D. Wis. 2016) ("The Court concludes that [plaintiff's] claim for unjust enrichment can survive a motion to dismiss because [plaintiff] has alleged that any purchase contracts

challenged the validity of the MSA, Preventive has a plausible claim of unjust enrichment against nCap 5. nCap 5 retained a benefit—a $500,000 advance—under circumstances where it would be inequitable for the nCap 5 to retain the benefit without compensating Preventive.

However, Preventive's unjust enrichment claim against nCap 11, Sutera, and Spencer does not allege a plausible claim for relief. Preventive alleges that "Defendants unlawful[ly] received the $500,000 advance" and "Defendants gave nothing in exchange for the advance."[47] However, under the terms of the MSA, nCap 5 expressly acknowledges that it was the recipient of the $500,000 advance from Preventive.[48] Accordingly, Preventive's enrichment claim against nCap 11, Sutera, and Spencer is dismissed.

**D. Conversion**

Preventive's conversion claim mirrors Preventive's breach of contract claim and, therefore, is impermissible under the economic loss rule. "'A conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.'" *Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 30, 305 P.3d 196 (quoting *Fibro Trust, Inc. v. Brahman Fin., Inc.*, 1999 UT 13, ¶ 20, 974 P.2d 288). "Whether the facts establish the elements of conversion is a question of law . . ." *Lawrence v. Intermountain, Inc.*, 2010 UT App 313, ¶ 10, 243 P.3d 508.

In the court's view, the conversion theory alleged by Preventive relies on the same factual basis as Preventive's breach of contract claim. Therefore, Preventive's conversion claim is prohibited by the economic loss rule. Preventive alleges a claim for conversion as follows:

---

between himself and [defendant] are potentially voidable."); *In re Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, No. 09-2076RSL, 2010 WL 2640256, at *6 (W.D. Wash. June 25, 2010) ("Because plaintiff has not sought to void the invoices, they govern the relationship between the parties. Plaintiff's equitable claim of unjust enrichment against [defendant] therefore fails as a matter of law.").
[47] Dkt. No. 2 at ¶¶ 93–94.
[48] Dkt. No. 2-1 at § 5(a).

> [Preventive] transferred $500,000 to Defendants in performance of the [MSA] . . . Defendants took possession of the $500,000, and have willfully retained the money without lawful justification . . . According to the [MSA], Defendants are only entitled to spend the advances made pursuant to it upon receipt of a purchase order.[49]

Preventive's breach of contract claim is substantially similar.  Preventive's breach of contract allegations state:

> [Preventive] and Defendant nCap 5 and nCap 11 entered into the [MSA] in December of 2015 . . . In performance of the contract, [Preventive] provided $500,000 to Defendants . . . Defendants breached the contract by failing to deliver the promised Products to [Preventive] to be marketed and sold.[50]

Unlike Preventive's fraud and negligent misrepresentation claims, Preventive's conversion claim does not allege an independent duty in tort.  Rather, Preventive's conversion allegations arise from Defendants' failure to comply with their contractual duties under the MSA.  Therefore, the economic loss rule prohibits Preventive from recovering in tort what it can recover in contract.

**E. Theft**

Similarly, Preventive's civil theft claim turns on the parties' obligations under the MSA and, therefore, is barred by the economic loss rule.  Pursuant to Utah Code Ann. § 76-6-408(1):

> A person commits theft if he receives, retains, or disposes of the property of another knowing that it has been stolen, or believing that it probably has been stolen, or who conceals, sells, withholds or aids in concealing, selling, or withholding the property from the owner, knowing the property to be stolen, intending to deprive the owner of it.

Section 76-6-408(1) applies "whether a person is found in possession or control of other property stolen on a separate occasion, . . . regardless of whether the property is stolen and retained or stolen then received by another."  *State v. Stevens*, 2011 UT App 366, ¶ 13, 264 P.3d 555 (quotations and citations omitted).  Furthermore, any individual who violates § 76-6-408(1) "is

---

[49] *See* Dkt. No. 2 at ¶¶ 85–87.
[50] *Id.* at ¶¶ 80–82.

civilly liable for three times the amount of actual damages, if any sustained by the plaintiff, and for costs of suit and reasonable attorney fees." Utah Code Ann. § 76-6-412(2).

Utah courts have yet to address whether the economic loss rule may preclude statutory civil theft claims. But, Utah courts have relied on Colorado's economic loss rule to formulate Utah's economic loss doctrine. *See Hermansen*, 2002 UT 52, ¶ 16 (adopting Colorado's independent duty analysis to the economic loss rule). Under Colorado law, the economic loss doctrine may bar civil statutory theft claims where there is no indication that the legislature intended to expand contractual remedies through statute. *See Makoto USA, Inc. v. Russell*, 250 P.3d 625, 628–29 (Colo. Ct. App. 2009) ("There is no indication that the stolen property statute was intended to expand contractual remedies.").

Based on the statutory text, there is no indication that the Utah legislature intended for § 76-6-408(1) to statutorily expand contractual remedies. Moreover, Preventive's civil theft claim is inextricably intertwined with the parties' duties under the terms of the MSA. *See W. Convenience Stores, Inc. v. Thielen*, No. 09-CV-02626-LTB-BNB, 2011 WL 866755, at *7 (D. Colo. Mar. 14, 2011) (applying Colorado law to dismiss a civil theft claim where the plaintiff's theft claim was "inextricably intertwined" with the plaintiff's breach of contract claim); *see also Oilman Int'l, FZCO v. Neer*, No. 10-CV-02810-PAB-BNB, 2012 WL 1059987, at *3 (D. Colo. Mar. 29, 2012). Preventive's complaint alleges civil theft pursuant to § 76-6-408(1) as follows:

> Defendants obtained $500,000 of [Preventive's] money in order to fund purchase orders of the Product . . . Defendants were not authorized to use that money for any purpose other than delivering purchase orders . . . No purchase orders have ever been submitted by [Preventive] to Defendants, or delivered by Defendants to [Preventive] . . . In fact, the Product was never actually developed by Defendants, and could therefore not have been delivered . . . After [Preventive] learned of Defendants' fraud and inability to perform under the [MSA], [Preventive] demanded the return of its money . . . Defendants have refused to return the

money, account for its whereabouts, or confirm that the money has not been spent.[51]

The success of Preventive's theft claim turns on Defendants' obligations under the terms of the MSA.[52]  Therefore, the economic loss rule prohibits Preventive from recovering in tort what it can recover in contract.

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss[53] is GRANTED IN PART AND DENIED IN PART.  The following claims are dismissed: Preventive's breach of contract claim against nCap 11; Preventive's unjust enrichment claim against nCap 11, Sutera, and Spencer; and Preventive's conversion and theft claims against all Defendants.  Preventive's remaining claims are sufficiently pled to survive a motion to dismiss.

IT IS SO ORDERED.

Dated this 9th day of January, 2017.

BY THE COURT:

_____
Paul M. Warner
United States Magistrate Judge

---

[51] *Id.* at ¶¶ 99–104.

[52] Dkt. No. 2-1 at § 5(a) ("The Advance shall offset amounts owed by [Preventive] to [nCap 5] under this Agreement and any Purchase Orders, which credit shall be reflected on invoices sent by [nCap 5] to [Preventive].").

[53] Dkt. No. 4.