IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PREVENTIVE ENERGY SOLUTIONS, L.L.C., a Wyoming limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>NCAP VENTURES 5, L.L.C., a Delaware limited liability company; NCAP VENTURES 11, L.L.C., a Delaware limited liability company; ANTHONY J. SUTERA, an individual; and RHETT SPENCER, an individual,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:16-cv-00809-JCB<br><br>Magistrate Judge Jared C. Bennett |
| NCAP VENTURES 5, L.L.C., a Delaware limited liability company; and NCAP VENTURES 11, L.L.C., a Delaware limited liability company,<br><br>    Counterclaim Plaintiffs/Third-Party Plaintiffs,<br><br>v.<br><br>PREVENTIVE ENERGY SOLUTIONS, L.L.C., a Wyoming limited liability company; and KEVIN OLESON, an individual,<br><br>    Counterclaim Defendants/Third-Party Defendants. | |

All parties in this case have consented to Magistrate Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[1] At the final pretrial conference, the court requested supplemental briefing regarding the application of Utah's economic loss rule to Plaintiff Preventive Energy Solutions, L.L.C.'s ("Preventive") first four causes of action. After reading the parties' respective memoranda, the relevant cases, and the December 21, 2015 contract in this action, the court determines that the economic loss rule bars Preventive's first four causes of action. Therefore, Preventive's lone issue for trial will be its remaining breach of contract claim against nCap Ventures 5, L.L.C. ("nCap 5").

## BACKGROUND

Preventive filed this action against nCap 5, nCap Ventures 11, L.L.C. ("nCap 11"), Anthony Sutera, and Rhett Spencer (collectively, "nCap Defendants") and alleged: (1) fraud; (2) fraud in the inducement; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) breach of contract; (6) conversion; (7) unjust enrichment; and (8) theft. Although the first three causes of action appear to be different claims, they are not. In fact, all three allege that the nCap Defendants made misrepresentations "for the purpose of inducing Plaintiff to pay them $500,000."[2] In addition to alleging the same facts, the elements for each of the first three causes

---

[1] ECF No. 8.

[2] ECF No. 2, ¶¶ 56 (fraud), 61, 64 (fraud in the inducement), and 68 (fraudulent misrepresentation).

of action are identical under Utah law.³ Thus, the first three causes of action are really just one fraud claim.

The nCap Defendants moved to dismiss Preventive's claims and argued, among other things, that the economic loss rule barred Preventive's first four causes of action.⁴ Magistrate Judge Paul M. Warner granted the motion in part and denied it in part.⁵ Specifically, Judge Warner denied the nCap Defendants' motion as to Preventative's fraud and negligent misrepresentation claims based on the economic loss rule because those claims arose "during the pre-contract negotiation phase," and, therefore, created a duty independent of the contract that Preventive and the nCap Defendants had executed.⁶ Although Judge Warner denied the motion to dismiss as to Preventive's fraud and negligent misrepresentation claims, he granted their motion under the economic loss rule as to Preventive's conversion claim.⁷ He also granted the nCap Defendants' motion in part by dismissing Preventive's breach of contract and unjust

---

³ *Compare* Keith v. Mountain Resorts Dev., L.L.C., 2014 UT 32, ¶ 41, 337 P.3d 213 (stating elements for fraud in the inducement); *and* Webster v. JP Mogan Chase Bank, 2012 UT App 321, ¶ 16, 290 P.3d 930 (stating elements for fraud, which are identical to elements for fraud in the inducement); *and* Larsen v. Exclusive Cars, Inc., 2004 UT App 259, ¶ 7, 97 P.3d 714 (stating elements for fraudulent misrepresentation, which are identical to fraud in the inducement and fraud).

⁴ ECF No. 4 at 13-17.

⁵ ECF No. 14.

⁶ *Id.* at 13.

⁷ *Id.* at 17-18.

enrichment claims against all defendants except nCap 5.[8] Additionally, Judge Warner dismissed Preventive's theft claim in its entirety.[9] Thus, after granting the nCap Defendants' motion in part, Preventive's first four causes of action survived against all defendants, while its breach of contract and unjust enrichment claims survived only as to nCap 5.

Subsequently, the parties moved for partial summary judgment.[10] In their substantive briefing, the parties did not discuss the economic loss rule. After the parties had finished briefing but before oral argument on their summary judgment motions, the Utah Supreme Court issued *Healthbanc International, L.L.C. v. Synergy Worldwide, Inc.*,[11] and opined on a certified question from another Judge in this court as to whether an exception exists to the economic loss rule for fraudulent inducement.[12] The Utah Supreme Court held that "there is no fraud exception [to the economic loss rule] that applies where the alleged fraudulent inducement arises out of the very grounds alleged as a basis for a breach of contract action."[13] In arriving at this holding, the Utah Supreme Court rejected the argument that "'there is an important distinction between failure to perform the contract itself, and the promises that induce a party to enter into a contract in the first place.'"[14] Instead, the court reasoned that if a misrepresentation made prior to

---

[8] *Id.* at 14-17.

[9] *Id.* at 18-21.

[10] ECF Nos. 34, 35.

[11] 2018 UT 61, 435 P.3d 193.

[12] *Id.* at ¶ 1.

[13] *Id.*

[14] *Id.* at ¶¶ 18-19 (citation omitted).

4

entering into a written contract were exempt from the economic loss rule, nearly every breach of warranty action would become a tort claim sounding in fraud by submitting a simple affidavit stating that misrepresentations were made before the contract was signed.[15] Consequently, the Utah Supreme Court rejected the notion that alleging pre-contract misrepresentations was enough to avoid the application of the economic loss rule to fraud claims. This determination seems to directly contradict Judge Warner's prior ruling declining to dismiss Preventive's fraud and negligent misrepresentations claims under the economic loss rule.

A few weeks after the Utah Supreme Court issued *Healthbanc International*, the nCap Defendants submitted a supplemental memorandum to Judge Warner.[16] The manner of bringing this new decision to Judge Warner's attention was improper because the supplemental memorandum was not submitted as a notice of supplemental authority,[17] and the nCap Defendants did not seek leave of court to file a supplemental memorandum containing new arguments. Consequently, Judge Warner's decision on the parties' summary judgment motions expressly declined to consider this new authority from the Utah Supreme Court.[18] Judge Warner then denied both parties' motions for summary judgment.[19]

---

[15] *Id.* at ¶ 19.

[16] ECF No. 53.

[17] DUCivR 56-1(e).

[18] ECF No. 61 at 4-5.

[19] *Id.* at 12.

Nearly two years following the denial of their summary judgment motions, the undersigned conducted the final pretrial conference in place of the now retired Judge Warner. At the hearing, the court acknowledged the parties' pre-hearing agreement that their causes of action based on quantum meruit theories (i.e., Preventive's unjust enrichment and nCap 11's estoppel claims) should be dismissed because the parties agree that they had entered into a contract, which precludes those claims from consideration at trial. However, the nCap Defendants raised anew in their motion in limine whether Preventive's first three fraud claims and its claim for negligent misrepresentation are barred under the economic loss rule.[20] At the pretrial conference, the court ordered the parties to file supplemental briefing on whether the economic loss rule bars Preventive's first four causes of action. The parties did so, and, after considering those submissions, the court finds that the economic loss rule bars Preventive's first four claims for the reasons stated below.

## ANALYSIS

### I. THE ECONOMIC LOSS RULE BARS PREVENTIVE'S FIRST FOUR CAUSES OF ACTION BECAUSE THEY ENTIRELY OVERLAP WITH THE CONTRACT

Preventive's first four causes of action are barred under Utah's economic loss rule because the December 2015 contract completely covers all the alleged misrepresentations that Preventive asserts in this action.

> The economic loss rule marks the fundamental boundary between contract law and tort law. Generally speaking, the economic loss rule prevents the recovery of purely economic damages under a tort theory when a contract covers the subject matter of the dispute. Therefore, when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual

---
[20] ECF Nos. 120, 121 at 3, 122 at 5-6.

relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon. The application of the economic loss rule depends on whether a duty exists independent of any contractual obligations between the parties. Once there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract. In contrast, all contractual duties—and any breach of those duties—must be enforced through contract law. If, however, an independent duty exists that does not overlap with a contractual duty, the economic loss rule does not bar a party from bringing a tort claim based on that independent duty.[21]

The economic loss rule can bar both fraud and negligent misrepresentation claims.[22]

Because a contract exists between the parties in this action, the court first considers the alleged misrepresentations that Preventive alleges create a duty independent of the December 2015 contract. Thereafter, the court reviews the duties contained in the contract. Finally, the court compares the alleged misrepresentations with the duties established under the contract and determines that the misrepresentations completely overlap with contractual duties, which invokes the economic loss rule and bars Preventive's first four causes of action.

    A. <u>The Alleged Misrepresentations</u>

Preventive claims that the nCap Defendants made at least 12 misrepresentations that induced Preventive to pay the nCap Defendants $500,000 and enter into the written

---

[21] *Enis v. Alder Prot. Holdings, L.L.C.*, No. 2:19-CV-00512, 2021 WL 409785, at *7 (D. Utah Feb. 5, 2021) (internal citations and quotations omitted).

[22] *Healthbanc Int'l.*, 2018 UT 61 at ¶ 1; *Reighard v. Yates*, 2012 UT 45, ¶ 25, 285 P.3d 1168 (holding that the economic loss rule applies to negligent misrepresentation claims where "[a]ny tort duties" owed to the plaintiff "overlap[ped] with [defendant's] contract duties to the [plaintiffs]").

7

agreement.[23] These purported misrepresentations can be circumscribed into two general categories: (1) product specifications;[24] and (2) production readiness.[25] The court now reviews the agreement between the parties prior to determining whether the above-cited misrepresentations are addressed in the agreement.

      B. <u>The Agreement's Provisions</u>

Among the many provisions in the parties' agreement, the nCap Defendants direct the court's attention to sections 4(a) and 7(b). Section 4(a) provides that "[t]he parties hereto shall develop mutually agreeable specifications for the Product in writing not less than thirty (30) days after" the agreement's effective date.[26] Thus, even assuming that pre-agreement representations were made about the product's specifications, the agreement contemplated Preventive and the nCap Defendants jointly determining those specifications. In fact, Exhibit A to the agreement is supposed to contain a description of the product, but it does not because the parties apparently never mutually agreed on product specifications.

Section 7(b) contains warranties between the parties. In section 7(b), nCap 5 warranted that "the Product will be manufactured, packed, and labeled by Vendor in material accordance with the Product Specifications"[27] that the parties were supposed to jointly determine under

---

[23] ECF No. 139 at 4-6.

[24] *Id*. at 4-5 (a-d and h-i).

[25] *Id*. at 5-6 (e-g and j-l).

[26] ECF No. 124-1 at 3.

[27] *Id*. at 5.

section 4(a) but never did. Accordingly, section 7(b) appears to link the status of production to the condition precedent of creating product specifications, which never occurred.

Finally, the parties' agreement includes a merger clause, which states in relevant part, "[t]here are no representations, warranties, undertakings, or agreements between the parties hereto with respect to the subject matter hereof except as set forth herein."[28] Despite the overuse of legalese (i.e., hereto, hereof, and herein) in a single sentence, the merger clause shows that the parties intended their agreement to supersede any prior warranties including those dealing with product specifications and production readiness, among others.

    C. The Alleged Misrepresentations Completely Overlap with the Terms of the Agreement

Sections 4(a) and 7(b) of the parties' agreement completely overlap with the alleged misrepresentations concerning the product's specification and general readiness for production. In both sections, the parties were supposed to meet and agree upon product specifications, which would need to occur before the product would be ready for production. The contract's merger clause then invalidated any prior warranties regarding these topics. Therefore, the agreement appears to address the very subjects of the misrepresentations that Preventive complains of here.

Even though the agreement provided a mechanism to address both product specifications and its status for production, the fact is that the parties never determined those product specifications. Consequently, the court must address whether the failure to agree to

---

[28] *Id.* at 16.

those specifications puts the pre-contract misrepresentations outside of the reach of the contract and within the grasp of tort law. The answer to that question must be "no."

The parties' failure to decide upon the all-important product specifications cannot take the alleged misrepresentations outside of the reach of the contract because the failure to engage in those negotiations is a potential breach of contract claim itself by either party. Indeed, holding otherwise could potentially incentivize breaching the agreement. Assuming *arguendo* that: (1) Preventive refused to engage in the product specification determination required under the agreement; and (2) this court decided that the parties' failure to agree on specifications made the pre-contract misrepresentations separate from the contract, then Preventive would be able to bring fraud claims even though it was the party who prevented those specifications from being determined. Thus, under this hypothetical, the party who refused to participate in the process it agreed to in a contract would be rewarded by being able to assert fraud claims, which never would have existed but for the party's recalcitrance. Accordingly, even though the product specifications were never decided between the parties, that is an issue that is subsumed within the contract itself, otherwise allowing a tort remedy would incentivize bad contractual behavior.

This outcome cannot be because the law of torts was never intended to hijack the law of contracts. Avoiding a tort hijack of contract law is precisely why the economic loss rule was adopted in first place.[29] Given that the agreement between Preventive and the nCap Defendants

---

[29] *Enis,* 2021 WL 409785, at *7 ("The economic loss rule marks the fundamental boundary between contract law and tort law." (citations and quotations omitted)).

completely addresses the subjects of the alleged misrepresentations here, the economic loss rule bars Preventive's first four causes of action.[30]

## ORDER

The nCap Defendants' motion to exclude presentation of evidence on Preventive's first four causes of action[31] is GRANTED, and the jury will not be instructed as to any of Preventive's fraud and negligent misrepresentation claims. Consequently, Preventive's lone claim for trial is for breach of contract against only nCap 5, and, because the December 2015 contract governs, Preventive will be limited to the damages allowed under section 10 thereof, if any.

DATED July 6, 2021.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[30] Additionally, even if the alleged misrepresentations occurred before the parties signed the agreement, that fact does not get around the economic loss rule based on the Utah Supreme Court's reasoning in *Healthbanc International*, 2018 UT 61 at ¶¶ 18-22.

[31] ECF No. 120.