IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PREVENTIVE ENERGY SOLUTIONS, L.L.C., a Wyoming limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NCAP VENTURES 5, L.L.C., a Delaware limited liability company,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:16-cv-00809-JCB<br><br>Magistrate Judge Jared C. Bennett |
| NCAP VENTURES 5, L.L.C., a Delaware limited liability company; and NCAP VENTURES 11, L.L.C., a Delaware limited liability company,<br><br>Counterclaim Plaintiffs/Third-Party Plaintiffs,<br><br>v.<br><br>PREVENTIVE ENERGY SOLUTIONS, L.L.C., a Wyoming limited liability company; and KEVIN OLESON, an individual,<br><br>Counterclaim Defendants/Third-Party Defendants. | |

INTRODUCTION

On July 7, 2021, nCap Ventures 5, L.L.C. ("nCap 5") and nCap Ventures 11, L.L.C. ("nCap 11") (collectively, "nCap Defendants") filed their trial brief.[1] The brief provided that the nCap Defendants would argue at trial: (1) the contract between the parties in this action required Preventive Energy Solutions, L.L.C. ("Preventive") to convey a 20% membership interest to nCap 11; (2) Preventive refused to convey this 20% membership interest to nCap 11; and (3) had Preventive complied with this obligation, then nCap 11 would have received 20% of whatever gains and losses Preventive experienced during the relevant time of the contract (i.e., 2015-2016). The trial brief then stated that because Preventive experienced a loss of $1,376,176.00 from 2015 to 2016, nCap 11 should have been able to claim 20% of that loss but for Preventive's breach of the contract. Although 20% of Preventive's loss amounts to $275,235.20, nCap 11 stated that it was claiming a loss of $208,807.40 but did not explain why that loss was less than 20% of Preventive's actual loss.[2]

Preventive objected to nCap 11's presentation of this evidence of loss at trial.[3] Specifically, Preventive contended that the nCap Defendants had failed to disclose this tax-loss calculation in their initial disclosures, any amended initial disclosures, or in discovery.[4] Preventive then argued that this failure to disclose was neither substantially justified nor

---

[1] ECF No. 144.

[2] *Id*. at 14-15.

[3] ECF No. 147.

[4] *Id*. at 2-3.

harmless because had this damage computation been disclosed previously, the parties would have engaged in further discovery to determine whether this purported 20% loss could have been an actual benefit to nCap 11 instead of a mere paper benefit that had no real-world impact on its tax liability.[5] Preventive further argued that determining whether or how much of this 20% loss nCap 11 could have claimed on its taxes was a matter requiring expert testimony, and neither party has designated any experts in this action.[6]

In response to Preventive's objection, the nCap Defendants filed two documents. First, the nCap Defendants filed an amended trial brief stating that had Preventive conveyed a 20% membership interest, then nCap 11 would have been able to claim a loss of $275,235.20, which is arithmetically 20% of Preventive's loss.[7] Second, the nCap Defendants filed a response to Preventive's objections.[8] In that response, the nCap Defendants argue: (1) Preventive's objections to a trial brief have no basis in the Federal Rules of Civil Procedure;[9] (2) Preventive's objections are untimely because the deadline for motions in limine has passed;[10] (3) the nCap Defendants' disclosures adequately disclosed the basis for their damage

---

[5] *Id.* at 3.

[6] *Id.*

[7] ECF No. 148 at 15.

[8] ECF No. 149.

[9] *Id.* at 2.

[10] *Id.*

figure;[11] (4) Preventive should have sought discovery about this topic;[12] and (5) even if these tax-loss figures should have been disclosed, failure to do so was harmless.[13] Therefore, the nCap Defendants argued, the jury should be able to hear their loss theory.

After receiving the parties' briefing, the court had concerns in two areas: (1) whether Fed. R. Civ. P. 37(c)(1) required the exclusion of nCap Defendants' loss calculation; and (2) if these damages were excluded from trial, whether the nCap Defendants could make a prima facie showing of their breach of contract claims because damages is an element[14] and must be an "actual financial loss."[15] Given the importance of this issue to trial and to the survival of the nCap Defendants' counterclaims, the court convened a hearing by electronic means on July 9, 2021, at which it heard argument as to whether it should exclude the nCap Defendants' evidence of tax loss and, if so, whether the nCap Defendants' contract-based counterclaims could be presented to a jury.

During the hearing, the nCap Defendants conceded that they had never provided this loss calculation to Preventive, but by disclosing that they were entitled to 20% of whatever member distributions Preventive made from 2015 to 2016, that was enough to satisfy their

---

[11] *Id.* at 3-4.

[12] *Id.* at 5.

[13] *Id.* at 5-6.

[14] *Am. W. Bank Members, L.C. v. Utah*, 2014 UT 49, ¶ 15, 342 P.3d 224 (stating that the fourth element of a prima facie case for breach of contract is damages).

[15] *Stevens-Henager Coll. v. Eagle Gate Coll.*, 2011 UT App 37, ¶ 28, 248 P.3d 1025 (affirming summary judgment because plaintiff failed to provide "sufficient information for the jury to determine, without speculation, whether there was any actual financial loss due to Eagle Gate's actions or to calculate the amount of damages caused by Eagle Gate").

obligations under the Federal Rules of Civil Procedure. Additionally, they argued that even if they should have disclosed the figure, failure to do so was harmless because figuring out the tax loss was only a matter of simple arithmetic. The nCap Defendants confirmed that not being able to claim their portion of Preventive's loss amounted to a "tax loss" to nCap 11 but that they were not going to have any specific evidence of what that tax loss would be. Instead, the jury could infer that nCap 11 would have had a more favorable tax burden if it could claim such a loss. Preventive countered that determining an entity's actual tax loss is not a simple arithmetic calculation because laws such as 26 U.S.C. § 465 and 26 U.S.C. § 469 require a capital contribution to the entity for which a taxpayer claims a loss. The nCap Defendants never made any capital contributions to Preventive. Additionally, Preventive argued that even if the nCap Defendants could claim the purported loss, expert testimony regarding the nCap Defendants' structure, tax bracket, or pass-through status would be required to determine whether any of the entities suffered an actual loss that had any tangible tax benefit. In reply, the nCap Defendants argued that even if they were not entitled to claim this loss for want of a capital contribution, their damage was the lack of an opportunity to make a capital contribution. And, in any event, even if they could not show actual damage, then their counterclaims survived because they could claim nominal damages. The court stated that it was leaning toward excluding the evidence of tax loss but would reserve ruling until after the weekend to take these arguments under advisement.

After taking the weekend to consider the parties' arguments, the court excludes the evidence of tax loss under Fed. R. Civ. P. 37(c). Alternatively, under Fed. R. Evid. 403, the court excludes the evidence because the danger of confusing the issues substantially outweighs

its probative value. Although this evidence is excluded, the court also rules that the nCap Defendants' contract-based counterclaims survive because they can seek nominal damages under Utah law.[16] Each issue is discussed in order below.

ANALYSIS

I. **THE TAX-LOSS EVIDENCE IS EXCLUDED UNDER FED. R. CIV. P. 37(c).**

The nCap Defendants' tax-loss evidence should be excluded under Fed. R. Civ. P. 37(c). Rule 37(c)(1) requires the exclusion of evidence, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e) . . . unless the failure was substantially justified or is harmless." Thus, the court: (A) first addresses why the tax-loss calculation should have been disclosed under Rule 26(e) and then (B) shows that this failure to disclose was neither substantially justified nor harmless.

A. The Tax-Loss Information Should Have Been Disclosed Under Rule 26(e).

The nCap Defendants had an obligation to supplement their initial disclosures under Rule 26(e) by providing this damage computation long before filing their trial brief. Rule 26(a)(1) imposes an affirmative obligation upon parties to provide certain information "without awaiting a discovery request."[17] This last quoted phrase emphasizes the purpose of initial

---

[16] As a threshold matter, the court rejects the nCap Defendants' arguments that an objection to a trial brief is not countenanced under the Federal Rules of Civil Procedure because neither is a trial brief. The court asked the parties to file one. But when a party states in a trial brief that it is going to present evidence that was previously undisclosed, raising an objection to the presentation of that evidence is acceptable. That this objection was well after the deadline for motions in limine is of no moment because, as shown below, where a party is justifiably unaware of the presentation of evidence when motions in limine are due, it cannot be precluded from raising evidentiary objections to that previously undisclosed evidence.

[17] Fed. R. Civ. P. 26(a)(1)(A).

disclosures, which "imposes on parties a duty to disclose . . . certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement."[18] These disclosures are "the functional equivalent of court-ordered interrogatories," that are intended "to accelerate the exchange of basic information . . . and the rule should be applied in a manner to achieve these objectives."[19] Because this clear auto-disclosure obligation exists, a party who fails to make the requisite disclosures cannot argue that its failure should be excused because the other party failed to ask the right discovery questions. The Rules Committee has effectively removed the natural human and attorney tendency to blame someone else.

These disclosure duties do not evaporate after the early exchange of initial disclosures. Rule 26(e) provides:

> A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response:
>
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .[20]

Thus, a party must supplement if: (1) the party made a disclosure under Rule 26(a); (2) the party later learns that its prior disclosure is incomplete or incorrect in a material way; and (3) the information necessary to complete the prior disclosure is not already known to the other party. Each issue is addressed below.

---

[18] Fed. R. Civ. P. 26(a) advisory committee's note to 1993 amendment.

[19] Id.

[20] Fed. R. Civ. P. 26(e)(1)(A).

*1. The nCap Defendants Made Disclosures Under Rule 26(a).*

The nCap Defendants made an initial disclosure under Rule 26(a). Rule 26(a) required the nCap Defendants to disclose, among other things, "a computation of each category of damages claimed by the disclosing party."[21] When interpreting the Federal Rules of Civil Procedure, the court relies on their plain meaning.[22] To determine a word's plain meaning, the court can consult a dictionary.[23] According to the Oxford Dictionary, the term "computation" means: "The action or process of computing, reckoning, or counting; arithmetical or mathematical calculation . . . . [A] computed number or amount, a reckoning."[24] The word "compute" means: "To determine by arithmetical or mathematical reckoning; to calculate, reckon, count. In later use chiefly: to ascertain by a relatively complex calculation or procedure, typically using a computer or calculating machine."[25] Thus, for each category of damages, the discloser must provide a "computed number or amount" (i.e., an actual calculation) not merely the method that will be used to make the calculation.

---

[21] Fed. R. Civ. P. 26(a)(1)(A)(iii).

[22] *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning.").

[23] *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We may consult a dictionary to determine the plain meaning of a term.").

[24] *Computation*, *oed.com*, https://www.oed.com/view/Entry/37968?redirectedFrom=computation#eid (last visited July 10, 2021).

[25] *Compute*, *oed.com*, https://www.oed.com/view/Entry/37974?rskey=fabcI2&result=2&isAdvanced=false#eid (last visited July 11, 2021).

This requirement avoids potential mischief. For example, a plaintiff in a tort action could claim in the initial disclosures that she will seek 100% of medical expenses and leave it to the other side to figure out what that number is by sorting through discovery. After all, according to the plaintiff, the defendant only needs to locate the numbers and add them together. But this approach leaves a defendant guessing as to what the plaintiff actually claims as a medical expense. Indeed, when a plaintiff states that damages are "20% of X," the defendant is left with the question as to what "X" includes from the plaintiff's perspective, which may be very different than what the defendant's view of "X" may be. To avoid the guesswork, Rule 26(a) requires the damage claimant to provide *its* loss computation or else risk exclusion especially when the disclosure occurs shortly before trial.[26] Knowing the amount of claimed damages affects how a court resolves discovery disputes (i.e., Rule 26(b)(1) requires the court to consider the "amount in controversy") and how the parties approach settlement and the resources necessary to devote to discovery and trial.

To be sure, in the beginning of a case, this type of precise calculation may not be possible because necessary information may be in the hands of the opposing party. But the parties are expected to disclose all the detail they can with the information they have and cannot refuse to disclose because they have not yet received discovery.[27] That was certainly the case

---

[26] *Jackson v. United Artists Theatre Cir., Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011) (excluding medical damage evidence because computation was disclosed just before trial even though defendant had all discovery of medical bills).

[27] Fed. R. Civ. P. 26(a)(1)(E) ("A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.").

here with the nCap Defendants' disclosures, which is why their initial disclosures stated early on that they will seek damages "equivalent to the value of a 20% membership interest in Preventive."[28] Although this was an adequate disclosure based on the then available information, the nCap Defendants were aware that they would need to amend it to provide the required computation of what this 20% interest amounted to once information became available.

> 2. *The nCap Defendants Learned That Their Initial Disclosure Was Incomplete in a Material Way.*

During litigation, the nCap Defendants learned of material information that would allow them to calculate their damages stemming from nCap 11's 20% interest in Preventive. The nCap Defendants obtained Preventive's tax returns for the years 2015 and 2016 during litigation and observed that Preventive declared losses totaling over $1.3 million for the relevant time period.[29] Armed with this information, the nCap Defendants could then calculate a precise number of Preventive's loss and determine that nCap 11's 20% share thereof may have deprived it of certain tax benefits. This realization would have caused nCap 11 to disclose "tax loss" as a new category of damages. Indeed, merely claiming entitlement to a portion of Preventive's loss is a very different damage category than claiming that nCap 11 suffered its own "tax loss," which naturally involves the complexities of tax law instead of a mere arithmetical calculation. Thus, during litigation, nCap 11 learned material information that allowed it to both designate "tax loss" as a damage category and calculate a precise number for that purported loss. Both of these disclosures are essential to complying with the nCap Defendants' Rule 26(a) obligations.

---

[28] ECF No. 147-1 at 7.

[29] ECF No. 148 at 14-15.

Nevertheless, the nCap Defendants never supplemented their Rule 26(a) disclosures with either the category of "tax loss" or the "computation" of that damage category.

       3. *Preventive Was Unaware of the Tax-Loss Category and Its Calculation*.

The record shows that Preventive was unaware of the nCap Defendants' tax-loss claim. The nCap Defendants have not shown any discovery response, deposition, or written correspondence showing that they either claimed a tax loss or provided a computation of that loss for Preventive to consider. In fact, the nCap Defendants concede that they never disclosed this information until their trial brief. Therefore, the nCap Defendants had an obligation to supplement their Rule 26(a) disclosures with a category of tax-loss damages and their precise computation of those damages.[30]

    B. <u>The nCap Defendants' Failure to Disclose Their Tax-Loss Category and Computation Is neither Substantially Justified nor Harmless</u>.

Although the nCap Defendants failed to comply with their obligation to disclose both the "tax-loss" damage category and its corresponding computation, Rule 37(c) will not exclude this evidence if the failure to disclose was either substantially justified or harmless.[31] To

---

[30] The court acknowledges that the precision of damage calculations differs according to the type of claim alleged in a lawsuit. For example, in a tort claim, a plaintiff may seek damages that can be computed with arithmetical precision (e.g., medical expenses) and damages which may not (e.g., pain and suffering). However, for breach of contract claims, precise damage calculations are required both under Rule 26 and under substantive contract law. *R4 Constructors, L.L.C. v. Inbalance Yoga Corp.*, 2020 UT App 169, ¶¶ 27-29, 480 P.3d 1075 (affirming district court's grant of summary judgment against plaintiff in contract action for plaintiff's failure to disclose a precise calculation of damages under Utah R. Civ. P. 26(a) and under Utah law of contracts regarding damages). Therefore, the court's demand for precision here is based on the legal realities of contract law.

[31] Fed. R. Civ. P. 37(c)(1).

determine substantial justification and harm, the court considers the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[32] Because the court does not believe that bad faith motivated the current evidentiary predicament, only the first three factors are addressed summarily below.

The prejudice that Preventive will incur if this tax-loss evidence is presented to the jury is significant. As a matter of law, nCap 11's view that a 20% share in Preventive's loss would have automatically entitled nCap 11 to $275,235.20 less in tax liability is erroneous. For example, where, as here, nCap 11 made no capital contributions to Preventive, Congress precludes a claim of loss.[33] As a practical matter, figuring out whether nCap 11 could claim any such loss on its taxes would require an expert, such as an accountant, which neither party has designated. In fact, the nCap Defendants acknowledged in their initial disclosures that determining their damages would require "[e]xpert analysis and testimony."[34] Allowing this legally and factually questionable evidence to go to the jury would prejudice Preventive because the jury would be confused. A jury could impose an award of $275,235.20 in damages, which would require Preventive to pay nCap 11 even though this purported loss is not monetizable at

---

[32] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[33] 26 U.S.C. §§ 465, 469 (limiting taxpayer claim of loss by amount of capital contribution to loss-producing entity).

[34] ECF No. 147-1 at 7.

all or at least not on a dollar-for-dollar basis. Presenting this evidence merely invites jury speculation, which renders this evidence highly prejudicial.

Second, there is no time to cure this prejudice. Indeed, "[c]ourts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial or substantially after discovery has closed."[35] Trial begins July 12, 2021. Discovery is long over and so is the opportunity to hire experts to determine whether this purported loss is an actual loss to nCap 11. Preventive had no prior notice of this loss theory and, therefore, did not seek experts to rebut it. The prejudice is incurable.

Nevertheless, the nCap Defendants argue that the arithmetical nature of the calculation removes any prejudice because the parties and the jury simply have to multiply Preventive's tax loses for 2015 to 2016 by 20% to figure out loss. However, as shown amply above, that calculation merely represents nCap 11's share of Preventive's loss and not the amount of money that nCap 11 <u>actually</u> lost from the overpayment of taxes. nCap 11's share of Preventive's loss and nCap 11's actual tax loss are likely very different, and neither party has or will proffer evidence showing how this share of hypothetical loss equals an actual tax loss. Thus, the prejudice is very real and, at this point, incurable.

Finally, introducing this evidence would disrupt the proceedings. Upon presentation of the evidence, Preventive will object. To determine the validity of the objection, the evidence's relevance, and danger for unfair prejudice (Fed. R. Evid. 403), the court will likely have to excuse the jury to make the requisite evidentiary determinations. This is inefficient especially

---

[35] *Jackson*, 278 F.R.D. at 594.

where, as here, this evidence should have been disclosed long ago. Therefore, the court excludes the evidence of loss under Fed. R. Civ. P. 37(c)(1).[36]

## II. THE DANGER OF ISSUE CONFUSION SUBSTANTIALLY OUTWEIGHS THE PROBATIVE VALUE OF THE TAX LOSS EVIDENCE.

Even if nCap 11 had complied with Rule 26, presenting the evidence of nCap 11's loss lacks probative value while creating a high danger of issue confusion amongst the jurors, which requires its exclusion under Fed. R. Evid. 403. Under Fed. R. Evid. 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Thus, under Rule 403, the court must determine: (A) the evidence's probative value, (B) the amount of issue confusion, and (C) whether the level of issue confusion substantially outweighs the evidence's probative value. Each issue is discussed in order below.

### A. Probative Value

Even if nCap 11 shared 20% of Preventive's loss, that loss, by itself, carries minimal probative value to prove damages. "Evidence has probative value if it tends to prove an issue."[37] nCap 11 claims that the evidence tends to prove that it suffered damage by not being able to enjoy the loses that a 20% interest in Preventive would have provided. However, under Utah

---

[36] To the extent nCap 11 contends that its "opportunity to participate" as a 20% owner is the injury here, it also should be excluded because it was neither disclosed as a damage category nor had an accompanying computation of damages resulting from that category. Therefore, its discussion at trial is also precluded under Rule 37(c).

[37] *United States v. Ball*, 547 F. Supp. 929, 934 (E.D. Tenn. 1981).

14

law, nCap 11's arithmetical loss calculation is not probative of damages. Although Utah courts have not addressed a case in which a party claims damage for not being able to claim a loss, the general principles for damage evidence that Utah courts have articulated are applicable here. At a minimum, Utah courts require a party claiming breach of contract to prove an "<u>actual financial loss</u>" with "sufficient certainty that reasonable minds might believe from a preponderance of the evidence that the damages were <u>actually suffered</u>."[38] To prove this "actual financial loss" that was "actually suffered," Utah courts do not allow proof that the plaintiff lost gross income.[39] That Utah courts disallow gross-income loss and, instead require proof of net-income loss further demonstrates that probative evidence of damages in contract cases is the party's actual, real-world, monetary loss; not merely a hypothetical loss that appears on paper.

At best, nCap 11's arithmetical calculation of its 20% share of Preventive's losses is nothing more than a gross-loss calculation. All this calculation shows is the gross amount of loss that nCap 11 could have claimed as a 20% interest holder. But gross-loss is meaningless without any additional evidence showing how it can reliably be translated into an actual financial loss. In other words, the arithmetical calculation, by itself, does not show "actual financial loss" that was "actually suffered" but a hypothetical loss on paper with no real-world impact. This type of evidence carries little probative value of contract damages in Utah.

---

[38] *Stevens-Henager Coll.*, 2011 UT App 37 at ¶ 28 (emphasis added) (quotations and citation omitted).

[39] *Id.* at ¶ 26 (citing *Atkin, Wright & Miles v. The Mountain States Tele. & Telegraph Co.*, 709 P.2d 330, 336 (Utah 1985)).

B. Confusion of the Issues

Presenting this evidence at trial presents a significant danger of confusing the issues. The court must consider whether evidence of damage may confuse a jury under Rule 403.[40] As discussed above in section I.B., nCap 11's gross-loss evidence presents a danger that the jury will not understand how this gross-loss figure translates into actual damages. Thus, the jury will have to improperly speculate about nCap 11's actual loss. The land of speculation is nowhere to strand a jury especially where, as here, proof of contract damages requires greater precision than in other areas of law. Therefore, the danger of jury confusion is high.

C. Comparing Probative Value and Danger of Confusion of the Issues

Given the low probative value of nCap 11's gross-loss evidence and the high danger of jury confusion, the court must exclude presentation of this evidence under Fed. R. Evid. 403. The court acknowledges that Rule 403 requires the imbalance between jury confusion and the probative value to be substantial. But that bar is easy to clear where, as here, the evidence of gross loss lacks probative value under Utah law and the danger of juror confusion and speculation is high. Therefore, even if the nCap 11 Defendants complied with their disclosure obligations under Fed. R. Civ. P. 26, their evidence of loss is excluded under Fed. R. Evid. 403.

---

[40] *Cincinnati Ins. Co. v. Bluewood, Inc.*, 560 F.3d 798, 807 (8th Cir. 2009) (affirming exclusion of expert testimony that was based on an improper method of damage calculation because it would confuse the jury).

### III. ALTHOUGH THE EVIDENCE OF GROSS LOSS IS EXCLUDED, THE CONTRACT-BASED COUNTERCLAIMS SURVIVE BASED ON A NOMINAL DAMAGES THEORY.

Although Utah law is replete with cases dismissing contract claims for failing to prove the element of damages,[41] Utah law also appears to allow contract claims to move forward on a theory of nominal damages.[42] "Nominal damages are recoverable upon a breach of contract if no actual or substantial damages resulted from the breach or if the amount of damages has not been proven."[43] Here, nCap 11 cannot show that it suffered any actual damage as a result of Preventive's alleged failure to convey a 20% membership interest. But, if nCap 11 can establish sufficient evidence at trial that Preventive failed to convey a 20% membership and that failure was a material breach of the parties' contract, then the breach of contract claim will go to the jury, which can make an "award of nominal damages in the amount of $1.00 [a]s appropriate."[44]

---

[41] *See, e.g., Stevens-Henager Coll.*, 2011 UT App 37 at ¶ 28.

[42] *Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 670 (Utah 1982).

[43] *Id.*

[44] *Id.* The court has some uneasiness about allowing the nCap Defendants' contract-based claims to continue on a nominal-damages theory given recent Utah cases dismissing breach of contract causes of action for failing to prove damages. Indeed, if nominal damages are available anytime there is a breach even when no damages can be shown, it seems to contradict the oft-repeated phrase in Utah law that "[a] plaintiff is required to prove both the fact of damages and the amount of damages" to succeed on a breach of contract claim. *Stevens-Henager Coll.*, 2011 UT App 37 at ¶ 16; *accord Atkin, Wright & Miles*, 709 P.2d at 336; *Sunridge Dev. Corp. v. RB&G Eng'g., Inc.*, 2013 UT App 146, ¶ 13, 305 P.3d 171. But, where, as here, the court is applying the *Erie* doctrine and relying on state law to provide the rule of decision, the court must rely on "the rulings of the highest state court." *Stickley v. State Farm Mut. Auto Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). As of the date of this order, the Utah Supreme Court authorizes nominal damage breach of contract claims. Therefore, if nCap 11 presents evidence of a breach to the jury, it would also be entitled to a nominal-damages instruction.

## ORDER

Accordingly, the nCap Defendants may not present any evidence or argument about the loss amount that they could have claimed had Preventive conveyed a 20% membership interest to nCap 11 as shown on pages 14-15 of the nCap Defendants' amended trial brief.

DATED July 11, 2021.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge